## LOGANSPORT AND WABASH VALLEY NATURAL GAS COMPANY v. OTT.

[No. 4,012.   Filed November 25, 1902.]

MINES AND MINERALS. — *Rate of Natural Gas Charges.* — Plaintiff brought suit to recover money alleged to have been wrongfully collected for gas furnished for use at his laundry and to enjoin defendant from charging him more than the amount charged manufacturers. Defendant's franchise permitted it to charge domestic consumers twelve cents per 1,000 cubic feet, meter measurement, for gas furnished domestic consumers, and seven and one-half cents per 1,000 feet to manufacturers, but no rate was fixed for laundries. Plaintiff made application for gas for his laundry and entered into a written contract to pay twelve cents per 1,000 feet, but the company voluntarily reduced the price to ten cents, the amount charged other laundries, which plaintiff paid without any objection. *Held,* that plaintiff was not entitled to recover.

From Howard Circuit Court; *W. W. Mount,* Judge.

Action by George Ott against the Logansport and Wabash Valley Natural Gas Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*J. C. Nelson, Q. A. Myers, J. C. Blacklidge, C. C. Shirley* and *C. Wolf*, for appellant.

*T. B. Reeder, B. F. Harness* and *W. R. Voorhis*, for appellee.

HENLEY, J.—This action was commenced by appellee to recover from appellant money which he claims was unlawfully collected from him by appellant, and asking that appellant be enjoined from charging more than a certain specified rate for gas furnished to him by it.

Briefly stated, the complaint, which is in three paragraphs, avers the following facts: That the appellant, on the 1st day of February, 1899, was a corporation, organized under the laws of the State of Indiana for the purpose of supplying natural gas for light and fuel to the citizens of the city of Logansport, and had been engaged in that business since the — day of May, 1895, under the ordinance passed by the common council of the city on the 10th day of September, 1888, authorizing the Logansport Natural Gas Company, of which the appellant is the successor, to lay and maintain pipes in the streets and alleys of the city for the purposes stated; that in consideration of the use of the streets, and the granting of the franchise and the exercise thereof, the ordinance fixed and established a maximum schedule of prices that could be charged to the consumers of gas furnished by the company, section eighteen of the ordinance being the one that fixed the prices to be charged by the appellant. The appellee also alleges that under the provision of this section, he was entitled to be furnished gas at the rate of five cents per 1,000 cubic feet for the purpose of operating a steam laundry in the city of Logansport; that he has been using gas from and including the month of November, 1895, up to and includ-

ing the month of March, 1901; that under the ordinance
he was entitled to have the gas furnished him at a rate not
exceeding five cents per 1,000 cubic feet; and that the ap-
pellant, in violation of the conditions of the ordinance, and
in excess of the maximum meter rate fixed and established
at five cents per 1,000 cubic feet, as he claims, unlawfully
extorted, collected, and compelled him, under penalty of
having the gas shut off from his laundry, to pay for each
and every 1,000 feet consumed by him in his laundry the
sum of ten cents per 1,000 cubic feet, in all aggregating
the sum of $1,000. It is also alleged in the complaint that
appellant is threatening and would, if not restrained by the
court, and in violation of the conditions imposed by the or-
dinance, and in excess of the maximum meter rate of section
eighteen of the ordinance, continue to demand, extort, and
compel appellee to pay from month to month, after Janu-
ary 31, 1899, under penalty of having the gas shut off from
his laundry, the sum of ten cents per 1,000 cubic feet per
meter measurement. The further statement is made in the
third paragraph of complaint that appellee was using an
upright stove for heating purposes, the diameter of which
was over eight but not exceeding fourteen inches, the sched-
ule price of which was fixed in the ordinance at $1.25 per
month, to which fifty per cent. might be added for a period
of ten years, which time expired January 1, 1899, after
which time the schedule rate should prevail; that, after the
expiration of the ten years as aforesaid, appellant continued
to charge appellee the schedule rate, with fifty per cent.
added. The prayer is that appellant be enjoined from
charging more than the schedule price.

To this complaint there are answers in eight paragraphs,
the first of which is a general denial, the second a plea of
payment, the third that the plaintiff's claim was without
consideration, and the fourth, fifth, sixth, and seventh para-
graphs state the affirmative defense relied upon by appel-
lant as follows: Admitting the allegations of the

complaint in reference to the passage of the ordinance set out in the plaintiff's complaint, and that the appellant is the successor of the Logansport Natural Gas Company, it is alleged that under the provisions of section eighteen, referred to in the complaint, it is provided that gas may be furnished to a patron of the company under a special agreement,—a copy of this agreement, which is in the form of an application signed by appellee, is filed with the answer; that under this agreement the appellant is authorized to charge appellee twelve cents per 1,000 cubic feet, but it voluntarily reduced the price to ten cents per 1,000 cubic feet meter measurement. It is further alleged in the answer that the appellee entered into this contract freely; that there was no force, coercion, or threats of any character; and that he voluntarily paid the price agreed upon between him and the company. Therefore he ought not to recover. To these several paragraphs of answer, except the first, a demurrer was filed in the court below, and overruled. The reply was a general denial. After the issues were made the cause was venued to the Howard Circuit Court, to which court it was submitted for trial without a jury. There was a finding and judgment in favor of appellee in the sum of $344.10.

Counsel for appellant discuss only that specification of the assignment of errors which is predicated upon the action of the court in overruling its motion for a new trial. Counsel for appellee have assigned cross-errors based upon the ruling of the trial court in overruling the demurrers to the fourth, fifth, sixth, seventh, and eighth paragraphs of appellant's answer.

The sole question presented by this appeal on behalf of the appellant is as to the sufficiency of the evidence to sustain the finding and judgment. The evidence is in the record, and is uncontradicted. There is not the slightest conflict as to any material fact. We here briefly state the evidence introduced upon the trial of the cause. The

ordinance passed by the common council of the city of Logansport was first introduced in evidence. This ordinance constituted the franchise given by the city of Logansport to the Logansport Natural Gas Company, and was effective from the 10th day of October, 1888. Section eighteen of the ordinance is the only part of it material to the case. By this section the prices to be charged are fixed. The monthly and annual charges for cooking stoves and ranges, for stoves in residences and offices, for furnaces, for stores, halls, business houses, and hotels, and for restaurant use, are all stated with particularity. Following these prices the said section eighteen continues in these words: "Any consumer mentioned in the foregoing schedule using gas amounting to the sum of $5 per month, or $30 per annum, according to the foregoing schedule, shall have the right to have gas furnished by meter measurement and not by said schedule rates; but in that event said corporation shall have the right to charge and receive therefor any sum, not exceeding eight cents per $1,000 cubic feet. Such meters shall be furnished upon the written application of consumers entitled to the same, without cost to such consumer, by such corporation. The consumer may use such gas for both heating and illuminating purposes. The corporation furnishing gas under the provision of the ordinance shall have the right to discontinue the further supply of gas to any consumer in case of ten days' default after the first day of each succeeding month in the payment of charges for said gas. But when the payment of such charges shall have been made, gas shall again be furnished such consumer on his request, provided said corporation shall have the right to require the payment for gas one month in advance if it so desires. For all manufacturing purposes, and for all other consumers, and for all other purposes not designated in the foregoing schedule for which natural gas can or may be utilized, such natural gas shall be supplied and furnished at the option of the con-

sumer: (1) Either at fifty per cent. of the cost of Indiana steam coal at $2.50 per ton; or (2) by special agreement; or (3) by meter measurement, not exceeding five cents per 1,000 cubic feet." Said section also contains this provision: "Provided, that for the term of ten years from and after January 1, 1889, said corporation may charge fifty per cent. more than the price set out in the following schedule, but after January 1, 1899, the prices shall not exceed the following," etc. On the 7th day of December, 1898, and before the ten years above noted had expired, the common council of the city of Logansport passed an ordinance which was accepted by the appellant, it having succeeded to all the rights held by the Logansport Natural Gas Company, in which ordinance it was stipulated and agreed that appellant "shall be entitled to charge and recover from consumers, for the term and period of ten years, beginning January 1, 1899, and ending January 1, 1909, an additional price of fifty per cent. over and above the scheduled prices set out and fixed in said former ordinance," etc.

George Ott, the appellee, testified that he applied at the office of appellant for gas for use in his laundry, located in the city of Logansport; that he made his application in November, 1895, and desired to burn the gas by meter measurement; that he was not engaged in manufacturing, but simply washed and ironed shirts, linen, towels, etc.; that when he went to the office of the company and applied for the gas nothing was said to him about the price charged for gas furnished; that he had inquired and knew about the price charged for gas furnished laundries before he went to the company's office; that he knew the price was twelve cents per 1,000 feet; that he made no objection when the contract was presented to him for signature; that he signed the contract presented to him, which provided that he should pay for the gas used by him in two ironing machines and one boiler the sum of twelve cents per 1,000 feet by meter measurement. The contract is a part of the evidence.

There is nothing material in the evidence of Miss Blanch Thompson, who was an employe in the office of appellant, and who made out the contract which was signed by both parties to this suit, except that she testified that she often received the monthly payments due thereunder, and that no complaint or objection was made by appellee to the price, and the further fact that she wrote the price in the contract at twelve cents per 1,000 feet, when, in fact, the company had just prior to the time this contract was made, voluntarily reduced the price to laundries to ten cents per 1,000 feet, and appellee was given the benefit of this reduction, it being entered on the appellant's ledger at all times at ten cents instead of twelve cents per 1,000 feet.

A. P. Jenks testified that he had been connected with the gas company at Logansport as the local manager since its organization, and since appellant acquired the company he had been employed as its secretary and bookkeeper; that appellant has always charged seven and one-half cents per 1,000 feet for gas for manufacturing purposes, and twelve cents per 1,000 feet for gas for domestic purposes; that there were three laundries using gas in Logansport prior to the time the contract was made with the appellee; that they paid twelve cents per 1,000 feet under special contract of the kind made with appellee, up to June, 1895, when the price was reduced to ten cents per 1,000 feet, which rate has been changed since that time; that appellee never made any complaint or objection to the price charged him; that Mrs. Ott, the wife of appellee, asked to have the price reduced; that she claimed the gas of the laundry ought to be furnished on the same terms that manufacturers received, which was seven and one-half cents per 1,000 feet. Witness told her he could not change the rate, but would take the matter up with the company, and would let her know what the decision was. The company decided that if Mr. Ott wanted to take the gas for his laundry under the

manufacturers' contract, which provided that in cold weather the supply could be cut off by giving one hour's notice, he could get it at the rate of seven and one-half cents per 1,000 feet. Mrs. Ott was so informed, and she said she would not agree to that; that the notice was too short. This ended the discussion as to the change of the contract, and appellee has continued to pay ten cents per 1,000 feet under his contract. The manufacturers have been turned off during cold weather on account of gas shortage, but neither appellee nor any of the laundries using gas have been turned off on account of a shortage of gas.

The appellee contends that under the ordinance which established the meter rate to manufacturers at five cents per 1,000 feet, with an additional fifty per cent. which the ordinance permitted the appellant to charge, that the highest possible rate which the appellee could be charged would be seven and one-half cents per 1,000 feet, and it was this view of the matter which was adopted by the trial court, and the judgment rendered in favor of appellee is for the amount paid appellant over and above seven and one-half cents per 1,000 feet for the gas consumed under his contract with appellant. Appellee was not a manufacturer. He objected to being so classed. Laundries were not specially mentioned in the ordinance under which appellant operated. Appellee inquired of his friends in the same line of business, and knew before he entered into the contract with appellant, just what the price would be. Appellant made a special contract with each laundry in the city, treating them all alike, giving them the benefit of a continuous service in all kinds of weather, the same as to its domestic consumers, and at a less price per 1,000 feet. The ordinance permitted appellant to charge twelve cents per 1,000 feet for all gas furnished to domestic consumers by meter, while appellee, under his special contract, was charged but ten cents per 1,000 feet. We are unable to see that the strict letter of the ordinance has in any way been violated by the

special contract with the class of consumers of which appellee was one. The contract between the company and appellee was one which the ordinance expressly authorized. More than this, if any construction different from the ordinary meaning is to be given to the words "by special agreement" used in that section of the ordinance fixing the rate to be charged, then the construction given to it by the parties themselves ought to be adopted.

The answers of the appellant which set up the special contract as a defense to this action were properly held to be a good defense. This defense was established by the uncontradicted evidence of the witnesses, including appellee himself. The evidence wholly fails to sustain the material allegations of the complaint, and the action must fail.

The cases cited by counsel for appellee which hold an ordinance to be a contract to be strictly enforced when accepted, and that a payment of more than the rate provided therein can be recovered even though under contract, undoubtedly state the law, but, as we see it, they are not applicable to the facts here presented. The company has done nothing which its contract with the city did not permit.

The judgment is reversed, with instructions to the trial court to sustain appellant's motion for a new trial.